**MARTIN D. SINGER (BAR NO. 78166)**
**TODD S. EAGAN (BAR NO. 207426)**
**PAUL N. SORRELL (BAR NO. 126346)**
**LAVELY & SINGER**
**PROFESSIONAL CORPORATION**
2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906
Telephone: (310) 556-3501
Facsimile: (310) 556-3615
Email: mdsinger@lavelysinger.com
teagan@lavelysinger.com
psorrell@lavelysinger.com

Attorneys for Defendants
WILLIAM H. BLOCK, QED PICTURES, LLC, and QED INTERNATIONAL, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| QED HOLDINGS, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM H. BLOCK, an individual; QED PICTURES, LLC, a Delaware limited liability company; QED INTERNATIONAL, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO.: 2:15-CV-02390-GW-JEM<br><br>[Hon. George H. Wu]<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANTS WILLIAM H. BLOCK, QED PICTURES, LLC AND QED INTERNATIONAL, LLC FOR AN ORDER COMPELLING ARBITRATION AND DISMISSING THE ACTION OR STAYING THE ACTION PENDING ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[DECLARATIONS OF WILLIAM H. BLOCK AND MARTIN D. SINGER IN SUPPORT THEREOF FILED CONCURRENTLY HEREWITH]**<br><br>Date: May 21, 2015<br>Time: 8:30 a.m.<br>Courtroom: 10 |

**TO PLAINTIFF AND ITS ATTORNEYS OF RECORD HEREIN:**

PLEASE TAKE NOTICE that, on May 21, 2015 at 8:30 a.m. or as soon thereafter as the matter may be heard in Courtroom 10 of the United States District Court, located at 312 N. Spring Street, Los Angeles, CA 90012, before the Honorable U.S. District Court Judge George H. Wu, there will be a hearing on the motion of Defendants William H. Block, QED Pictures, LLC and QED International, LLC for an order compelling arbitration of this action filed on behalf of Plaintiff QED Holdings, LLC ("QED Holdings") and dismissing the action or staying it pending completion of arbitration.

The Motion is made pursuant to 9 U.S.C. ¶¶ 2 and 4 and other governing authorities on the grounds that QED Holdings and Defendant William H. Block entered into a written agreement on or about May 5, 2012 containing a broad arbitration clause that encompasses each of the claims in this action. Despite Block's attempts to meet and confer with QED Holdings and requests that QED Holdings stipulate to arbitrate the subject claims – and despite the fact that QED Holdings has already instituted an arbitration proceeding asserting related claims against Block – QED Holdings refuses to submit the claims in this case to arbitration. Therefore, this Motion was necessitated.

The Motion is made and based on this Notice, the accompanying Memorandum of Points and Authorities and Declarations of William H. Block and Martin D. Singer, all other documents on file with the Court in this action, and such other documents, evidence and argument as may be presented to the Court in connection with this Motion.

///

///

///

///

///

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on April 10, 2015.

Dated: April 23, 2015

MARTIN D. SINGER
TODD S. EAGAN
PAUL N. SORRELL
LAVELY & SINGER
PROFESSIONAL CORPORATION

By: ______________________________
MARTIN D. SINGER
Attorneys for Defendants WILLIAM H. BLOCK, QED PICTURES, LLC, and QED INTERNATIONAL, LLC

# TABLE OF CONTENTS


Page No.

I. PRELIMINARY STATEMENT .......... 1

II. STATEMENT OF FACTS .......... 2

III. ARGUMENT .......... 6

A. Federal and California Law Strongly Favor Enforcement of Arbitration Agreements. .......... 6

B. As It Recognized When It Filed Its Arbitration Demand, QED Holdings Is Bound By the Arbitration Agreement Contained in Section 9 of the Employment Agreement. .......... 7

C. QED Holdings is Also Required to Arbitrate Its Claims Against QED Pictures and QED International. .......... 9

IV. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**FEDERAL CASES** Page No.

*Cox v. Ocean View Hotel Corp.*
533 F.3d 1114 (9th Cir. 2008) .......... 7

*Moses H. Cone v. Mercury Constr. Co.*
103 S.Ct. 927 (1983) .......... 6

*Murphy v. DirecTV, Inc.*,
724 F.3d 1218 (9th Circ. 2013) .......... 9

*Paine Webber, Inc. v. Faragalli*
61 F.3d 1063 (3rd Cir. 1995) .......... 9

*Reddam v. KPMG LLP*
2004 WL 3761875, No.SACV04-1227 at *3 (C.D.Cal. 2004) .......... 6

*Robinson v. Isaacs*
2011 WL 4862420 at *2, No. 11CV1021 (S.D. Cal. Oct. 12, 2011) .......... 6, 7

*Rogers v. Royal Caribbean Cruise Line*
547 F.3d 1148 (9th Cir. 2008) .......... 6

*United Steelworkers of Am. v. Warrior & Gulf Navigation*
80 S.Ct. 1347(1960) .......... 7

**STATE CASES**

*Erickson v. Aetna Healthplans of Cal., Inc.*
71 Cal.App.4th 646 (1999) .......... 6

*Goldman v. KPMG LLP*
173 Cal.App.4th 219 (2009) .......... 9

**FEDERAL STATUTES**

9 U.S.C. § 2 .......... 6

## MEMORANDUM OF POINTS & AUTHORITIES

## I. PRELIMINARY STATEMENT

Court intervention is necessary in order to enforce the parties' unambiguous written agreement to arbitrate the claims alleged in the Complaint, and prevent Plaintiff QED Holdings, LLC ("QED Holdings") from pursuing a baseless attempt to litigate claims in multiple fora and thereby needlessly increase the time and expense of this litigation.

QED Holdings cannot reasonably dispute that it agreed in writing to arbitrate the claims that it now asks this Court to adjudicate. Just last month, in fact, QED Holdings instituted an arbitration proceeding against Defendant William H. Block ("Block") claiming that Block violated his contractual and fiduciary duties by misappropriating corporate opportunities and assets allegedly owned by QED Holdings. Now, QED Holdings brings this separate action against Block and his companies falsely claiming that Block impermissibly used the QED name in commerce in violation of the same contractual and fiduciary duties allegedly owed by Block as QED Holdings' CEO. By litigating essentially the same claims in two separate proceedings, QED Holdings seeks to harass Block and drive up the cost and effort associated with defending against QED Holdings' specious claims.

There is no legitimate basis for QED Holdings to resist arbitration. The filing of this action is nothing more than a frivolous tactic designed to create protracted litigation and increase Defendants' expenses. The Court should grant the Motion, compel arbitration of all of QED Holdings' claims and dismiss this action or stay the action pending arbitration.

As discussed below, QED Holdings and Block entered into an Employment Agreement in April 2012 containing a broad arbitration clause which mandates arbitration of any dispute arising out of, relating to or in connection with that agreement. This action falls directly within the parameters of this clause. As shown below, QED Holdings' claims in this case arise out of the employment relationship

established pursuant to the Employment Agreement, and the Complaint in fact specifically alleges as a basis of its claims that Block breached his duties and obligations pursuant to and arising under the Employment Agreement. In addition to the fact that, as Block has repeatedly informed QED Holdings, none of the defendants continue to use the QED name (and, as a result, QED Holdings' claims are frivolous), there is no reasonable dispute that QED is obligated to arbitrate its claims against Block in QED Holdings' pending arbitration proceeding. QED Holdings is required to arbitrate its claims against the other two named Defendants (companies controlled by Block) as well, because those claims are likewise dependent upon and intertwined with the alleged obligations of the Employment Agreement containing the arbitration clause.

There is no reasonable doubt that the QED Holdings agreed to arbitrate the claims alleged in the Complaint. There is no justification for QED Holdings' failure to arbitrate all of its claims against Block in the pending arbitration proceeding. Arbitration of this action should be compelled.

## II. STATEMENT OF FACTS

Block is widely-regarded as a leading producer and financier of theatrical feature films. In 2006, Block founded Defendant QED International, LLC ("QED International"). As CEO of QED International, he produced several hit films including *District 9*, *Elysium*, *W* and *Fury*. Declaration of William H. Block ("Block Decl."), ¶ 2. Block formed Defendant QED Pictures in 2014 and is its sole principal. Block Decl., ¶ 2.

In April 2012, Media Content Capital ("MCC") made a substantial investment in QED International. As a result, a new entity, QED Holdings, LLC ("QED Holdings"), was formed. MCC was the majority shareholder in the new entity, holding 75% of the stock, and Block was a minority shareholder. Block Decl., ¶ 3.

At approximately the same time MCC made its investment, Block entered into an Employment Agreement with QED Holdings, a true and correct copy of which is

attached as Exhibit "1" to the Block Decl. ("the Employment Agreement"). Under the Employment Agreement, Block became CEO of the new company. Block Decl., ¶ 4. The parties further agreed that any dispute arising out of or relating to the Employment Agreement or the performance or breach thereof would be resolved in binding arbitration.

Section 9 of the Employment Agreement provides as follows:

> "9. Arbitration. Any dispute, controversy or claim (each a "Dispute" and collectively the "Disputes") arising out of, relating to or in connection with this Agreement, including any Dispute regarding its validity or termination, or the performance or breach thereof under this Agreement shall be settled exclusively and finally by a single arbitrator selected by the mutual agreement of the parties to such Dispute in an arbitration proceeding administered by JAMS ("JAMS") under its Comprehensive Arbitration Rules and Procedures ..."
>
> (Emphasis in original.)

QED Holdings wound down its operations in 2014. Block and QED began negotiating a Settlement Agreement in the Summer of 2014. During the negotiation of the Settlement Agreement, QED Holdings specifically agreed that the movie *Dirty Grandpa* should be set up as a Block film, not a QED Holdings film. Block Decl., ¶ 5 and Exh. "2." Block and QED Holdings subsequently entered into a Settlement Agreement in December 2014 ("Settlement Agreement"). Block Decl., ¶ 6 and Exh. "2."

On or about March 6, 2015, QED Holdings served Block with a Demand for Arbitration before JAMS, designated JAMS Reference No. 1210032262 ("the Arbitration"). A copy of its Supplemental Demand for Arbitration and Statement of Claims is attached as Exhibit "3" to the Block Decl. ("the Demand"). In the Demand, QED Holdings alleges that Block without authorization siphoned valuable

film projects and other assets of QED Holdings to himself and other companies owned by him.

The primary asset at issue in the Arbitration involves a film property by the name of *Dirty Grandpa*. The Demand alleges that Block diverted funds attributable to *Dirty Grandpa* (and another film that was not developed) to himself and his companies, falsely held himself out as working on QED Holdings' behalf, and committed QED Holdings to liabilities without its authorization. Block Decl., ¶ 7 and Exh. "3." Block filed Counterclaims in the Arbitration, contending among other claims that the Settlement Agreement is binding on the parties. Block Decl., ¶ 7 and Exh. "4."

On April 1, 2015, QED Holdings filed this action. Its claims, like the claims in the Demand, are based upon and arise out of Block's conduct as CEO of QED Holdings pursuant to his Employment Agreement. The Complaint, in fact, specifically alleges that Block's contractual and fiduciary duties to QED Holdings, upon which its claims in this case are premised, emanate primarily from the Employment Agreement. *See, e.g.*, Complaint, ¶¶ 18-20.

QED Holdings alleges in the Complaint, among other things, that pursuant to the Employment Agreement, Block was to "perform his duties and obligations as CEO loyally and conscientiously"; devote substantially all of his business time and attention to the business of QED Holdings and not render services of any nature to any other person or entity without QED Holdings' consent; and convey all rights to any idea or concept relating to film-related business developed by him to QED Holdings, and to promptly disclose all such matters to QED Holdings. Complaint, ¶ 19. The Complaint further alleges that, pursuant to the Employment Agreement, QED Holdings had articulated its belief that Block would be an important component in its success, and to that end, was investing significant amounts of money and placing significant responsibility and trust in Block. The Complaint alleges that,

pursuant to the Employment Agreement, Block assumed fiduciary duties to QED, including a duty of loyalty. Complaint, ¶ 20.

The Complaint alleges that Block violated his duties as CEO emanating from the Employment Agreement in that "while Block was serving as QED's CEO, he was actively and surreptitiously working to steal QED's assets and leverage QED's opportunities for his own personal profit." Complaint, ¶ 23. QED Holdings alleges that Block further violated his duties as CEO of QED Holdings emanating from his Employment Agreement by, among other things, developing the film *Birth of the Dragon* through the QED Pictures entity, notwithstanding that it is allegedly an asset of QED Holdings (Complaint, ¶¶ 24-30); developing the film *Dirty Grandpa* notwithstanding that it is an asset of QED Holdings (Complaint, ¶¶ 31-39); and using QED Holdings' assets and trademarks without its authorization in various respects to assist his attempts to develop *Dirty Grandpa* (Complaint, ¶¶ 40-43).

There is no legitimate dispute that the allegations of the Complaint are premised upon the alleged contractual and fiduciary obligations of Block that QED Holdings alleges to have arisen from the Employment Agreement containing the broad form arbitration clause in Section 9 quoted above. Clearly, all of QED Holdings' claims in this case, as well as in the arbitration proceeding it commenced against Block previously, are encompassed within the arbitration clause and must be resolved through JAMS as agreed. Despite requests from Block, QED Holdings has refused to arbitrate its claims in this case. Singer Decl., ¶¶ 2-4 and Exhs. "5" and "6" thereto. Furthermore, Block is not using the name QED, and counsel for QED has been repeatedly notified of that fact. Block Decl., ¶ 8; Singer Decl., ¶ 5 and Exhs. "6" and "7."

///

///

///

///

## III. ARGUMENT

### A. Federal and California Law Strongly Favor Enforcement of Arbitration Agreements.

The Federal Arbitration Act ("FAA") provides for enforcement of arbitration provisions in any contract affecting interstate commerce. *See, e.g.*, *Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1153-1154 (9th Cir. 2008). The FAA provides that a "written provision in any … contract involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As noted by the United States Supreme Court, "Section 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone v. Mercury Constr. Co.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941 (1983).

The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability." *Moses H. Cone,* 460 U.S. at 24-45, 103 S.Ct. at 941; *Reddam v. KPMG LLP*, 2004 WL 3761875, No.SACV04-1227 at *3 (C.D.Cal. 2004) ("On a motion to compel arbitration, courts resolve all doubts in favor of arbitration."). California law is in accord. *See Erickson v. Aetna Healthplans of Cal., Inc.*, 71 Cal.App.4th 646, 655 (1999) ("California law incorporates many of the basic policy objectives contained in the FAA, including a presumption in favor of arbitrability. . . .")

"In determining whether to compel a party to arbitration . . . a district court's role under the FAA is limited 'to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Robinson v. Isaacs*, 2011 WL 4862420 at *2, No. 11CV1021 (S.D. Cal. Oct.

12, 2011) (quoting *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008)). "[A] district court must compel arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation*, 363 U.S. 574, 582-83, 80 S.Ct. 1347(1960)).

In this case, it cannot be disputed that a valid arbitration agreement exists, or that the dispute at issue falls squarely within the scope of the arbitration agreement. Furthermore, as set forth below, the claims alleged in this case clearly arise out of, relate to or are alleged in connection with the Employment Agreement between Block and QED Holdings. Accordingly, arbitration of the claims in this action must be compelled.

**B. As It Recognized When It Filed Its Arbitration Demand, QED Holdings Is Bound By the Arbitration Agreement Contained in Section 9 of the Employment Agreement.**

In the Employment Agreement, the parties agreed to arbitrate "any dispute, controversy or claim…arising out of, relating to or in connection with" the Employment Agreement, including "its validity or termination, or the performance or breach thereof." Block Decl., ¶ 4 and Exh. "1." The claims alleged in the Complaint clearly fall within this broad provision. Because the arbitration agreement between the parties encompasses the dispute at issue here, arbitration of all of QED Holdings' claims must be compelled.

As stated, QED Holdings' claims are primarily premised on the rights and obligations of the parties under the Employment Agreement, and all of its claims emanate from Block's actions as QED Holdings' CEO pursuant to that agreement. The Complaint, in fact, specifically alleges that Block's contractual and fiduciary duties to QED emanated primarily from the Employment Agreement. Complaint, ¶¶ 18-20.

QED Holdings alleges that Block violated his duties as CEO emanating from the Employment Agreement, primarily by using the QED name and mark. It alleges that "while Block was serving as QED's CEO, he was actively and surreptitiously working to steal QED assets and leverage QED's opportunities for his own personal profit." Complaint, ¶ 23. It further alleges that Block violated his duties as CEO of QED Holdings emanating from his Employment Agreement by, among other things, developing the film *Birth of the Dragon* through QED Pictures, notwithstanding that it is allegedly an asset of QED Holdings (Complaint, ¶¶ 24-30); developing the film *Dirty Grandpa* notwithstanding that it is an asset of QED Holdings (Complaint, ¶¶ 31-39); and using QED Holdings' assets and trademarks without its authorization in various respects to assist his attempts to develop *Dirty Grandpa* (Complaint, ¶¶ 40-43).

The Complaint is directly premised upon alleged contractual and fiduciary obligations of Block that QED Holdings alleges to have arisen from the Employment Agreement containing the broad form arbitration clause. Clearly, therefore, all of QED Holdings' claims – just like the misappropriation and usurpation of opportunity claims alleged in the Demand now pending before JAMS – are encompassed within the arbitration clause and must be resolved through JAMS. The claims arise out of, relate to or are in connection with Employment Agreement or the performance or breach thereof and are, therefore, encompassed within Section 9.

Plaintiff apparently contends that it is not obligated to arbitrate the claims alleged in the Complaint because they arise from the Contribution Agreement, as opposed to the Employment Agreement. However, even a cursory review of the Complaint, including the allegations referenced above, shows that this is simply not the case. The Complaint is premised upon Block's alleged obligations as QED Holdings' CEO – a position clearly established and governed by the Employment Agreement. The arbitration clause in the Employment Agreement is very broad and

encompasses each and every claim arising out of, relating to or in connection with Block's employment established pursuant to the Employment Agreement.

Here, QED Holdings' claims involve alleged actions by Block violating duties he owed as a result of the Employment Agreement and arise out of, relate to or are connected with Block's performance of his role as CEO pursuant to the Employment Agreement. The Court must compel arbitration where a party unequivocally refuses to arbitrate in contravention of its written agreement. *Paine Webber, Inc. v. Faragalli*, 61 F.3d 1063, 1066 (3rd Cir. 1995). The Court should enforce Plaintiff's agreement to arbitrate this dispute by granting this Motion, dismissing or staying this action and ordering all claims to arbitration.

### C. QED Holdings is Also Required to Arbitrate Its Claims Against QED Pictures and QED International.

Although Defendants QED Pictures and QED International did not sign the Employment Agreement, QED Holdings is nevertheless bound to arbitrate its claims against those entities pursuant to the equitable estoppel doctrine. Equitable estoppel requires a party to arbitrate with a non-party in either of two circumstances: (1) when the signatory must depend on the written agreement providing for arbitration in asserting claims against a non-signatory; or (2) where the signatory alleges "substantially interdependent and concerted misconduct" by the non-signatory and a signatory, and the alleged misconduct is "founded in or intimately connected with the obligations of the underlying agreement." *Goldman v. KPMG LLP*, 173 Cal.App.4th 219, 217-218 (2009); *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229-1232 (9th Circ. 2013).

QED Holdings is bound to arbitrate its claims against QED Pictures and QED International under both of these tests. First, all of the claims alleged against QED International and QED Pictures involve their alleged use of QED Holdings' marks and business opportunities resulting from Block's misconduct in violation of his rights and responsibilities under the Employment Agreement. *See e.g.*, Complaint,

¶¶ 15, 25-30, 33, 42, 43. QED Holdings necessarily depends on the terms of the Employment Agreement providing for arbitration in asserting all of its claims against QED Pictures and QED International. It is, therefore, required to arbitrate those claims.

Similarly, the claims against the Defendant entities involve substantially interdependent and concerted alleged misconduct with Block, and, as stated, are founded in or intimately connected with the obligations of the Employment Agreement. QED Holdings is equitably estopped on two separate grounds from refusing to arbitrate its claims against QED Pictures and QED International.

## IV. CONCLUSION

There is already an arbitration in which QED Holdings alleges similar if not the very same type of claims against Block. The claims in this case should likewise be referred to arbitration. For all of the foregoing reasons, Defendants Block, QED Pictures and QED International respectfully request that the Court grant this Motion and compel arbitration of all claims and dismiss this action or, alternatively, stay the action pending arbitration.

Dated: April 23, 2015

MARTIN D. SINGER
TODD S. EAGAN
PAUL N. SORRELL
LAVELY & SINGER
PROFESSIONAL CORPORATION

By: ______________________
MARTIN D. SINGER
Attorneys for Defendants
WILLIAM H. BLOCK, QED PICTURES, LLC, and QED INTERNATIONAL, LLC