1 | **MARTIN D. SINGER (BAR NO. 78166)**
**TODD S. EAGAN (BAR NO. 207426)**
2 | **PAUL N. SORRELL (BAR NO. 126346)**
**LAVELY & SINGER**
3 | **PROFESSIONAL CORPORATION**
2049 Century Park East, Suite 2400
4 | Los Angeles, California 90067-2906
Telephone: (310) 556-3501
5 | Facsimile: (310) 556-3615
Email:  mdsinger@lavelysinger.com
6 |       teagan@lavelysinger.com
      psorrell@lavelysinger.com
7 |
8 | Attorneys for Defendants
WILLIAM H. BLOCK, QED PICTURES, LLC
9 | and QED INTERNATIONAL, LLC

10

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| QED HOLDINGS, LLC, a Delaware limited liability company, | CASE NO.:  2:15-CV-02390-GW-JEM |
| | [Hon.  George H. Wu] |
| Plaintiff, | **ANSWER OF DEFENDANTS WILLIAM H. BLOCK, QED PICTURES, LLC AND QED INTERNATIONAL, LLC TO COMPLAINT FOR TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION** |
| v. | |
| WILLIAM H. BLOCK, an individual; QED PICTURES, LLC, a Delaware liability company; QED INTERNATIONAL, LLC, a Delaware liability company, | |
| Defendants. | |

Defendants William H. Block, QED Pictures, LLC and QED International, LLC (collectively, "Defendants") hereby respond to the "Complaint for Trademark Infringement and Unfair Competition" filed April 1, 2015 ("the Complaint") on behalf of Plaintiff QED Holdings, LLC ("Plaintiff") as follows:

## ANSWER TO ALLEGATIONS OF THE COMPLAINT

### I.   INTRODUCTION

1.      In response to Paragraph 1 of the Complaint, Defendants admit and allege that Plaintiff used the trademarks "QED" and "QED International" and conducted certain business activities as alleged in that paragraph since May 2012. Defendants deny that Plaintiff QED Holdings validly used the marks prior to 2012.  Except as expressly denied herein, Defendants admit the allegations of Paragraph 1.

2.      In response to Paragraph 2 of the Complaint, Defendants admit that Block served as QED's CEO and Director between May 2012 and approximately December 2014.  Defendants further admit and allege that the language of Block's written contract and the fiduciary duties imposed by law speak for themselves, and that Block's written contract was modified after it was entered into, including, but not limited to, through a Separation Agreement between Block and Plaintiff dated on or about December 19, 2014.  Except as expressly admitted herein, Defendants deny the allegations of Paragraph 2.

3.      In response to Paragraph 3 of the Complaint, Defendants are without information sufficient to enable them to admit or deny the allegations concerning the relief sought by Plaintiff in this action, and, on that basis, deny such allegations.  Except with respect to the matters denied herein on information and belief, Defendants deny the allegations of Paragraph 3.

### II.   JURISDICTION AND VENUE

4.      In response to Paragraph 4 of the Complaint, Defendants are without information sufficient to enable them to admit or deny the allegations of Paragraph 4 of the Complaint and, on that basis, deny the allegations of Paragraph 4.

5.      In response to Paragraph 5 of the Complaint, Defendants deny the allegations of Paragraph 5.

6.     In response to Paragraph 6 of the Complaint, Defendants admit that Block is domiciled and conducts business in this jurisdiction.  Except as expressly admitted herein, Defendants deny the allegations of Paragraph 6.

7.     In response to Paragraph 7 of the Complaint, Defendants deny the allegations of Paragraph 7.

8.     In response to Paragraph 8 of the Complaint, Defendants admit that QED International previously maintained its principal place of business and conducted business in this jurisdiction.  Defendants allege that QED International no longer conducts business under that name.  Except as expressly admitted herein, Defendants deny the allegations of Paragraph 8.

9.     In response to Paragraph 9 of the Complaint, Defendants deny the allegations of Paragraph 9.

III.   **THE PARTIES**

10.     In response to Paragraph 10 of the Complaint, Defendants are without information sufficient to enable them to admit or deny the allegations of Paragraph 10 of the Complaint and, on that basis, deny the allegations of Paragraph 10.

11.     In response to Paragraph 11 of the Complaint, Defendants admit the allegations of Paragraph 11.

12.     In response to Paragraph 12 of the Complaint, Defendants deny the allegations of Paragraph 12, and admit and allege that, as Plaintiff is aware, QED Pictures' status as a company has been cancelled.

13.     In response to Paragraph 13 of the Complaint, Defendants admit that QED International was a limited liability company organized and existing under the laws of Delaware prior to early 2015.  Except as expressly admitted herein, Defendants deny the allegations of Paragraph 13.

///

///

## IV.   FACTUAL BACKGROUND

### A.   Media Content Capital Invested Significant Funds in QED and Block.

14.     In response to Paragraph 14 of the Complaint, Defendants admit and allege that Block formed QED International in 2006, produced and financed the referenced pictures, and entered into an investment transaction with MCC as referenced in Paragraph 14.  Defendants further admit and allege that the terms of the investment transaction were subsequently modified, and that such modifications included agreements between QED and Block concerning motion pictures that Plaintiff could not and would not agree to finance, and Plaintiff specifically directed Block to finance certain projects outside QED, including but not limited to the motion picture *Dirty Grandpa*.  Except as expressly admitted herein, Defendants deny the allegations of Paragraph 14.

15.     In response to Paragraph 15 of the Complaint, Defendants admit and allege that the language of the Contribution Agreement speaks for itself. Defendants further admit and allege that Plaintiff received the right and title to certain intellectual property, including certain trademarks owned by QED International and associated goodwill, and that QED International was granted a limited, revocable license to use the name "QED."  Except as expressly admitted herein, Defendants deny the allegations of Paragraph 15 of the Complaint, and further admit and allege that the parties subsequently entered into agreements modifying the terms of the transaction including, but not limited to, with respect to motion picture projects Plaintiff could not and would not agree to finance including the motion picture *Dirty Grandpa*.

16.     In response to Paragraph 16 of the Complaint, Defendants admit and allege that a portion of the purchase price was paid to Block and his investment partners in QED International, and that the investment transaction as well as certain rules to govern operation of Plaintiff following the transaction were

reflected in a series of written agreements including the Contribution Agreement, Operating Agreement and Block's Employment Agreement, each of which speak for themselves.  Except as expressly admitted herein, Defendants are without information sufficient to enable them to admit or deny the allegations of Paragraph 16 of the Complaint and, on that basis, deny such allegations.

17.   In response to Paragraph 17 of the Complaint, Defendants admit and allege that the language of the Operating Agreement speaks for itself and that Plaintiff's interpretation of the agreement is conclusory and without foundation. Except as expressly admitted and alleged herein, Defendants deny each and every allegation in Paragraph 17 of the Complaint.

### B.   Block Owed Contractual and Fiduciary Duties to QED.

18.   In response to Paragraph 18 of the Complaint, Defendants admit the allegations of Paragraph 18.

19.   In response to Paragraph 19 of the Complaint, Defendants admit and allege that the terms and conditions of the Employment Agreement were subsequently modified by and between Plaintiff and Defendants including, but not limited to, with respect to the termination of Block's employment with QED in December 2014 and with respect to motion picture projects that Plaintiff could not or would not finance, including the *Dirty Grandpa* project, and Plaintiff instructed that Block finance such projects outside of QED.  Except as expressly admitted and alleged herein, Defendants admit the allegations of Paragraph 19.

20.   In response to Paragraph 20 of the Complaint, Defendants are without information sufficient to enable them to admit or deny the allegations of Paragraph 20 and, on that basis, deny such allegations.

21.   In response to Paragraph 21 of the Complaint, Defendants admit and allege that two principals of MCC sit on QED's board and have taken an active management role since 2012.  Except as expressly admitted and alleged herein, Defendants deny the allegations of Paragraph 21.

22.     In response to Paragraph 22 of the Complaint, Defendants admit and allege that, by mid-2014, Block and QED entered into discussions concerning potential ways to restructure the company and, ultimately, Block's separation from QED and financing of projects outside of QED.  Defendants further admit and allege that Block remained QED's CEO and a member of QED's board until approximately late 2014.  Except as expressly admitted and alleged herein, Defendants deny the allegations of Paragraph 22.

### C.     Block Intentionally Infringed and Misappropriated QED's Trade Name and Trademarks.

23.     In response to Paragraph 23 of the Complaint, Defendants deny each and every allegation of Paragraph 23.

24.     In response to Paragraph 24 of the Complaint, Defendants admit that, while Block served as CEO and a director of QED, QED began developing *Birth of the Dragon* and incurred certain liabilities in connection with its development. Except as expressly admitted herein, Defendants deny the allegations of Paragraph 24.

25.     In response to Paragraph 25 of the Complaint, Defendants admit and allege that Block formed QED Pictures and that Block was its sole member. Defendants further allege that QED Pictures no longer conducts business.  Except as expressly admitted and alleged herein, Defendants deny the allegations of Paragraph 25.

26.     In response to Paragraph 26 of the Complaint, Defendants admit that Block executed an agreement with certain Chinese investors for financing for *Birth of the Dragon*, and that the investors agreed to provide $10 million in financing and a $1 million down payment toward that financing that was pledged to QED Pictures.  Except as expressly admitted herein, Defendants deny the allegations of Paragraph 26.

*///*

27.     In response to Paragraph 27 of the Complaint, Defendants allege that a $1 million down payment for the project was paid into an account for the benefit of the production.  Except as expressly admitted herein, Defendants deny the allegations of Paragraph 27.

28.     In response to Paragraph 28 of the Complaint, Defendants admit and allege that QED International was granted a license to use the name "QED" in certain contexts and that the terms and conditions of the Contribution Agreement were modified and/or waived by agreement and consent of the parties in various respects, including with respect to development of *Birth of the Dragon*.  Except as expressly admitted and alleged herein, Defendants deny the allegations of Paragraph 28.

29.     In response to the allegations of Paragraph 29 of the Complaint, Defendants admit that QED has from time to time used the QED name in commercial activities.  Except as expressly admitted herein, Defendants deny the allegations of Paragraph 29.

30.     In response to Paragraph 30 of the Complaint, Defendants deny the allegations of Paragraph 30.

31.     In response to Paragraph 31 of the Complaint, Defendants admit that in or around 2013, QED through Block began developing *Dirty Grandpa* and that an option was acquired by QED Writing, LLC.  Defendants further admit and allege that, in 2014, QED communicated to Block that it could not and would not agree to finance the project, did not have the requisite financing available, and that Block should arrange for the project to be financed by a Block entity outside of QED.  Block and QED agreed that proceeds from the project would be shared pursuant to the terms and conditions of Block's Separation Agreement with QED reached on or about December 19, 2014.  Except as expressly admitted and alleged herein, Defendants deny the allegations of Paragraph 31.

///

1    32.    In response to Paragraph 32 of the Complaint, Defendants admit that
2    Block continued to work on the project and exercised the option to acquire the
3    screenplay.  Defendants further admit and allege that, in 2014, QED
4    communicated to Block that it could not and would not agree to finance the
5    project and informed Block that the project should be financed by a Block entity
6    outside of QED.  Block and QED agreed that proceeds from the project would be
7    shared pursuant to the terms and conditions of Block's Separation Agreement
8    with QED reached as of on or about December 19, 2014.  Except as expressly
9    admitted and alleged herein, Defendants deny the allegations of Paragraph 32.

10    33.    In response to Paragraph 33 of the Complaint, Defendants deny the
11   allegations of Paragraph 33.

12    34.    In response to Paragraph 34 of the Complaint, Defendants admit that
13   Block formed Block Entertainment, LLC, DG Licensing, LLC and Grandpa
14   Productions, LLC in 2014, that Block is the sole member and owner of Block
15   Entertainment, LLC, and that DG Licensing, LLC is owned by Block
16   Entertainment, which is its sole member.  Except as expressly admitted herein,
17   Defendants deny the allegations of Paragraph 34.

18    35.    In response to Paragraph 35 of the Complaint, Defendants admit that
19   DG Licensing was formed to hold rights to and develop the motion picture *Dirty*
20   *Grandpa*, that Block intends Grandpa Productions to be the production entity for
21   *Dirty Grandpa*, and that Grandpa Productions has entered into certain agreements
22   in connection with the development of that project.  Except as expressly admitted
23   herein, Defendants deny the allegations of Paragraph 35.

24    36.    In response to Paragraph 36 of the Complaint, Defendants admit
25   and allege that Block caused QED Writing to assign the *Dirty Grandpa*
26   screenplay rights to DG Licensing by executing an assignment of rights
27   containing the language quoted in Paragraph 36.  Except as expressly admitted
28   herein, Defendants deny the allegations of Paragraph 36.

37.     In response to Paragraph 37 of the Complaint, Defendants admit that Block executed an assignment of rights containing the language quoted in Paragraph 36 on behalf of QED Writing, LLC and DG Licensing.  Except as expressly admitted herein, Defendants deny the allegations of Paragraph 37.

38.     In response to the allegations of Paragraph 38 of the Complaint, Defendants admit and allege that Block negotiated distribution agreements on behalf of DG Licensing with respect to *Dirty Grandpa* and engaged in other activities in order to finance and develop *Dirty Grandpa* pursuant to the terms and conditions of his Separation Agreement with Plaintiff on or about December 19, 2014, with Plaintiff's knowledge and consent.  Except as admitted and alleged herein, Defendants deny the allegations of Paragraph 38.

39.     In response to Paragraph 39 of the Complaint, Defendants admit that Grandpa Productions has retained actors and a director and has begun filming *Dirty Grandpa*.  Except as admitted herein, Defendants deny the allegations of Paragraph 39.

40.     In response to Paragraph 40 of the Complaint, Defendants admit and allege that an umbrella agreement was entered into on QED's behalf in 2012 with the DGA with QED's knowledge, participation and consent.  Except as expressly admitted and alleged herein, Defendants deny the allegations of Paragraph 40.

41.     In response to Paragraph 41 of the Complaint, Defendants admit that QED is a signatory to the 2012 umbrella agreement with the DGA.  Except as expressly admitted herein, Defendants deny the allegations of Paragraph 41.

42.     In response to Paragraph 42 of the Complaint, Defendants deny the allegations of Paragraph 42.

43.     In response to Paragraph 43 of the Complaint, Defendants deny the allegations of Paragraph 43.

44.     In response to Paragraph 44 of the Complaint, Defendants deny the allegations of Paragraph 44.

1    45.    In response to Paragraph 45 of the Complaint, Defendants deny the
2    allegations of Paragraph 45.

3    ### FIRST CAUSE OF ACTION

4    ### INFRINGEMENT OF THE QED TRADE NAME

5    ### AND QED TRADEMARK

6    ### (Lanham Act § 1125(a)(1)(A))

7    ### (Against All Defendants)

8    46.    In response to Paragraph 46 of the Complaint, Defendants reallege
9    and incorporate by reference Paragraphs 1-45 set forth above.

10   47.    In response to Paragraph 47 of the Complaint, Defendants deny the
11   allegations of Paragraph 47.

12   48.    In response to Paragraph 48 of the Complaint, Defendants deny the
13   allegations of Paragraph 48.

14   49.    In response to Paragraph 49 of the Complaint, Defendants deny the
15   allegations of Paragraph 49.

16   50.    In response to Paragraph 50 of the Complaint, Defendants deny the
17   allegations of Paragraph 50

18

19   ### SECOND CAUSE OF ACTION

20   ### UNFAIR COMPETITION

21   ### (Lanham Act § 1125(a)(1)(A))

22   ### (Against All Defendants)

23   51.    In response to Paragraph 51 of the Complaint, Defendants reallege
24   and incorporate by reference Paragraphs 1-50 set forth above.

25   52.    In response to Paragraph 52 of the Complaint, Defendants deny the
26   allegations of Paragraph 52.

27   53.    In response to Paragraph 53 of the Complaint, Defendants deny the
28   allegations of Paragraph 53.

54.     In response to Paragraph 54 of the Complaint, Defendants deny the allegations of Paragraph 54.

55.     In response to Paragraph 55 of the Complaint, Defendants deny the allegations of Paragraph 55.

56.     In response to Paragraph 56 of the Complaint, Defendants deny the allegations of Paragraph 56.

57.     In response to Paragraph 57 of the Complaint, Defendants deny the allegations of Paragraph 57.

## THIRD CAUSE OF ACTION

### INFRINGEMENT OF THE REGISTERED "QED INTERNATIONAL" TRADEMARK

### (Lanham Act § 1114 (1)(a))

### (Against Defendants Block and QED International)

58.     In response to Paragraph 58 of the Complaint, Defendants reallege and incorporate by reference Paragraphs 1-57 set forth above.

59.     In response to Paragraph 59 of the Complaint, Defendants admit that QED since 2012 has owned and used the name "QED International" from time to time in commerce.  Except as expressly admitted herein, Defendants deny the allegations of Paragraph 59 in the context of this action.

60.     In response to Paragraph 60 of the Complaint, Defendants deny the allegations of Paragraph 60.

61.     In response to Paragraph 61 of the Complaint, Defendants deny the allegations of Paragraph 61.

62.     In response to Paragraph 62 of the Complaint, Defendants deny the allegations of Paragraph 62.

63.     In response to Paragraph 63 of the Complaint, Defendants deny the allegations of Paragraph 63.

# AFFIRMATIVE DEFENSES TO THE COMPLAINT

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

64.    As a First Affirmative Defense to the Complaint and each and every alleged cause of action therein, Defendants allege that the Complaint and each and every alleged cause of action therein fails to state facts sufficient to constitute a claim or cause of action against Defendants or any of them.

## SECOND AFFIRMATIVE DEFENSE
### (Consent/Authorization)

65.    As a Second Affirmative Defense to the Complaint and each and every alleged cause of action therein, Defendants allege that, to the extent that Defendants engaged in the actions and omissions alleged in the Complaint, Plaintiff authorized and/or consented to such actions and omissions.  As a result, Plaintiff is barred from pursuing any claim or cause of action against Defendants.

## THIRD AFFIRMATIVE DEFENSE
### (Modification)

66.    As a Third Affirmative Defense to the Complaint and each and every alleged cause of action therein, Defendants allege that the agreements upon which the purported causes of action in the Complaint are based, including the Contribution Agreement and Operating Agreement and Block's Employment Agreement, to the extent they are to be interpreted as alleged in the Complaint (which Defendants dispute), were modified to authorize all of the alleged conduct of Defendants upon which the Complaint is based (to the extent such conduct actually occurred).  Among other things, Plaintiff informed Defendants that they could not and would not agree to finance the *Birth of the Dragon* and *Dirty*

1    *Grandpa* motion picture productions, did not have the financing available for

2    these productions, and Block was specifically informed that *Dirty Grandpa* must

3    be set up and financed through a Block entity outside of QED.  In addition,

4    Block's Separation Agreement dated December 19, 2014 permits the conduct

5    upon which Plaintiff now purports to base its claims.  Due to the stipulated

6    modification of the agreements upon which Plaintiff now relies, all claims or

7    causes of action alleged in the Complaint are barred.

8

9    <u>**FOURTH AFFIRMATIVE DEFENSE**</u>

10    **(Novation/Release)**

11        67.    As a Fourth Affirmative Defense to the Complaint and each and

12    every alleged cause of action therein, Defendants allege that the agreements upon

13    which the causes of action in the Complaint are based, including the Contribution

14    Agreement, Operating Agreement and Block's Employment Agreement, to the

15    extent they are to be interpreted as alleged in the Complaint (which Defendants

16    dispute), were abandoned and/or changed in various respects to authorize all of

17    the alleged conduct upon which the Complaint is based (to the extent such

18    conduct actually occurred).  Among other things, Plaintiff informed Defendants

19    that they could not and would not agree to finance the *Birth of the Dragon* and

20    *Dirty Grandpa* productions and that Plaintiff did not have the requisite financing

21    available for these productions, and Block was told that *Dirty Grandpa* must be

22    set up and financed through a Block entity outside of QED.  In addition, Block's

23    Separation Agreement dated December 19, 2014 authorizes the conduct upon

24    which Plaintiff now purports to base its claims.  Due to a novation of the

25    agreements upon which Plaintiff now relies and Plaintiff's release of all

26    obligations or liabilities thereunder, all claims or causes of action alleged in the

27    Complaint are barred.

28    ///

## FIFTH AFFIRMATIVE DEFENSE

### (Termination)

68.     As a Fifth Affirmative Defense to the Complaint and each and every alleged cause of action therein, Defendants allege that the applicable provisions of the agreements upon which the causes of action in the Complaint are based, including the Contribution Agreement, Operating Agreement and Block's Employment Agreement, were terminated by mutual agreement of the parties pursuant to the Separation Agreement dated December 19, 2014, which authorizes the conduct upon which Plaintiff now purports to base its claims.  Due to termination of the applicable provisions of the agreements upon which Plaintiff now relies, all claims or causes of action alleged in the Complaint are barred.

## SIXTH AFFIRMATIVE DEFENSE

### (Estoppel)

69.     As a Sixth Affirmative Defense to the Complaint and each and every alleged cause of action therein, Defendants allege that as a result of Plaintiff's acts and omissions, including the acts and omissions alleged above as well as in Block's Counterclaims and Cross-Claims in the pending arbitration proceeding Plaintiff filed with JAMS, designated JAMS Case No. 1210032262 ("the Arbitration"), Plaintiff is estopped from asserting the claims herein.

## SEVENTH AFFIRMATIVE DEFENSE

### (Arbitrability of All Claims)

70.     As a Seventh Affirmative Defense to the Complaint and each and every alleged cause of action therein, Defendants allege that all claims alleged in the Complaint are subject to an arbitration requirement between the parties, as set forth in Defendants' Motion to Compel Arbitration filed in this case.

///

**EIGHTH AFFIRMATIVE DEFENSE**

**(Unclean Hands)**

71.     As an Eighth Affirmative Defense to the Complaint and each and every alleged cause of action therein, Defendants allege that Plaintiff has engaged in certain conduct, including the conduct alleged in Defendants' Counterclaims and Cross-Claims in the Arbitration and the conduct alleged above, as a result of which this action and each and every alleged cause of action therein is barred by the doctrine of unclean hands.

**NINTH AFFIRMATIVE DEFENSE**

**(Waiver)**

72**.**     As a Ninth Affirmative Defense to the Complaint and each and every alleged cause of action therein, Defendants allege that, as a result of Plaintiff's conduct, including the conduct alleged in the Counterclaims and Cross-Claims in the Arbitration and the conduct alleged above, Plaintiff has waived any right to assert the claims alleged in the Complaint.

**TENTH AFFIRMATIVE DEFENSE**

**(Laches)**

73.     As a Tenth Affirmative Defense to the Complaint and each and every alleged cause of action therein, Defendants allege that Plaintiff delayed an unreasonable period of time in bringing this action, which delay has prejudiced Defendants.  Consequently, this action and each and every cause of action therein is barred by the doctrine of laches.

///

///

///

///

## ELEVENTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

74.     As an Eleventh Affirmative Defense to the Complaint and each and every alleged cause of action therein, Defendants allege that Plaintiff has failed to make reasonable efforts to mitigate its alleged damages, if any, which bars Plaintiff from recovering in this action.

## TWELFTH AFFIRMATIVE DEFENSE

### (Set-off)

75.     As a Twelfth Affirmative Defense to the Complaint and each and every alleged cause of action therein, Defendants allege that to the extent that Plaintiff has suffered any loss, damage or injury as alleged in the Complaint (which Defendants deny), Defendants are entitled to a set-off against such purported loss, damage or injury in the amount of Defendants' damages resulting from Plaintiff's actions and omissions as described herein and in the Counterclaims and Cross-Claims alleged in the Arbitration.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Justification)

76.     As a Thirteenth Affirmative Defense to the Complaint and each and every alleged cause of action therein, Defendants allege that their conduct in regard to the matters alleged in the Complaint was justified and, as a result, Plaintiff is barred from recovery against Defendants.

///

///

///

///

///

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Impossibility)

77.     As a Fourteenth Affirmative Defense to the Complaint and each and every alleged cause of action therein, Defendants allege that Plaintiff did not have the financial ability or otherwise have the wherewithal to finance or develop the motion picture projects referenced in the Complaint and, as a result, it was impossible for Plaintiff to produce such projects and Plaintiff was not damaged as a result of the alleged acts and omissions referenced in the Complaint.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Reservation of Rights)

78.     As a Fifteenth Affirmative Defense to the Complaint and each and every alleged cause of action therein, Defendants allege that they presently have insufficient knowledge or information on which to form a belief as to whether they may have additional, as yet unstated, affirmative defenses.  Defendants reserve their right to amend this Answer and assert additional defenses and/or affirmative claims in the event that their investigation or discovery indicates that an amendment is appropriate.

///
///
///
///
///
///
///
///
///
///

## **PRAYER FOR RELIEF**

WHEREFORE, Defendants pray for judgment on the Complaint as follows:

1.      That the Complaint be dismissed, with prejudice, and that judgment be entered in Defendants' favor;

2.      That Defendants be awarded reasonable attorneys fees according to proof;

3.      That Defendants be awarded their costs of suit;

4.      That Defendants be awarded such other and further relief as the Court deems just and appropriate under the circumstances.


Dated: May 1, 2015                                     MARTIN D. SINGER
                                                                TODD S. EAGAN
                                                                PAUL N. SORRELL
                                                                LAVELY & SINGER
                                                                PROFESSIONAL CORPORATION


                                                                By:      /S/ Martin D. Singer
                                                                           MARTIN D. SINGER
                                                                Attorneys for Defendants WILLIAM
                                                                H. BLOCK, QED PICTURES, LLC,
                                                                and QED INTERNATIONAL, LLC